MICHELE BECKWITH
Acting United States Attorney
JEFFREY A. SPIVAK
ARELIS M. CLEMENTE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

**FILED**
Apr 10, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL KULIKOFF, <br><br> Defendant. | CASE NO. **1:25-cr-00074-KES-BAM** <br><br> Count One: 18 U.S.C. § 371 – Conspiracy to Transport and Cause to Be Transported a Hazardous Waste Without a Manifest; <br> Count Two: 42 U.S.C. §§ 6928(d)(5) and 6928(e) – Transportation of Hazardous Waste Without a Manifest; Knowing Endangerment of Others; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

INDICTMENT

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Transport and Cause to Be Transported a Hazardous Waste without a Manifest]

The Grand Jury charges: T H A T

MICHAEL KULIKOFF,

defendant herein as follows:

INTRODUCTORY ALLEGATIONS

1. At all times relevant herein, Defendant was a resident of and city councilmember for California City, which is in Kern County and the State and Eastern District of California. He also operated several businesses in California City, including a car wash business.

2. The Solid Waste Disposal Act of 1965, as amended by Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*, was enacted by Congress to address the growing

INDICTMENT                                              1

number of hazardous waste sites resulting from unregulated waste disposal practices. The objectives of RCRA include, among other things, protection of human health and the environment through stringent guidelines that regulate the generation, treatment, storage, and disposal of hazardous waste. RCRA accomplishes its objectives by creating a "cradle to grave" regulatory scheme to manage and track hazardous wastes from their point of generation to final disposition.

3. RCRA makes it a felony for any person to knowingly transport or cause to be transported hazardous waste without a manifest.

4. A "manifest" is the form used for identifying the quantity, composition, and the origin, routing, and destination of hazardous waste during its transportation from the point of generation to the point of disposal, treatment, or storage.

5. "Transportation" means "movement of hazardous waste by air, rail, highway, or water."

6. The determination of whether a waste is a RCRA hazardous waste is a two-step process; first, the waste must be a "solid waste" and, second, the solid waste must also be "hazardous." A material is a "solid waste" if it is "abandoned" by being "disposed of." A solid waste is a RCRA "hazardous" waste if it is listed as such.

7. Mercury is a listed hazardous waste.

8. Exposures to mercury, specifically metallic mercury, occur when metallic mercury is spilled so that mercury is exposed to the air. Metallic mercury mainly causes health effects when inhaled as a vapor where it can be absorbed through the lungs. Symptoms of prolonged and/or acute exposures include tremors, emotional changes, insomnia, and neuromuscular changes. Higher exposures may cause kidney effects, respiratory failure and death.

## THE CONSPIRACY

9. Beginning on a date unknown but not later than February 25, 2024 and continuing until on or about February 26, 2024, within Kern County, Defendant knowingly conspired and agreed with individuals, both known and unknown to the grand jury, with the intent to commit an offense against the laws of the United States, to wit: to transport and cause to be transported a hazardous waste without a manifest, in violation of Title 42, United States Code, Section 6928(d)(5).

## OBJECT OF THE CONSPIRACY

10. The object of the conspiracy was to transport and cause to be transported hazardous waste outside of the city limits of California City. Defendant wanted to avoid oversight of California City emergency services personnel regarding a mercury exposure incident that involved him and his car wash business.

## MANNER AND MEANS OF THE CONSPIRACY

11. In furtherance of said conspiracy, Defendant and his co-conspirators employed the following manner and means, among others:

12. On or about the night of February 25, 2024, Defendant learned that a mercury exposure incident had occurred at his car wash business in California City. Specifically, PERSON ONE had spilled a jar containing several ounces of mercury inside the cabin of a sports utility vehicle ("SUV") and had attempted to clean up the mercury using a vacuum cleaner at the car wash. PERSON ONE then drove the contaminated SUV to PERSON ONE's mother's residence, which was located adjacent to a school bus stop. PERSON ONE then called 9-1-1 because PERSON ONE experienced symptoms related to mercury exposure.

13. California City emergency services personnel responded to the scene and scanned the SUV for mercury. They detected approximately 20 times the allowable limit of mercury inside the SUV's cabin and put yellow caution tape around the SUV to deny entry to it. They also shut down the car wash business because the vacuum cleaner that PERSON ONE had used was contaminated as well.

14. Defendant then arrived at the scene and attempted to clean up the mercury himself. Defendant was told by the emergency services personnel that he had to stop because it was a hazardous materials scene and was unsafe. Defendant initially ignored these instructions but then left the scene a few minutes later.

15. On or about the morning of February 26, 2024, Defendant returned to the scene and obtained a quote from COMPANY ONE, which was an environmental services company, to clean up the mercury. Shortly thereafter, Defendant sent a video to his brother, who was then the mayor of California City, through Facebook and told him, in relevant part: "... so they're coning it off right now and taping it, but that motherf*****'s going to drive it to Boron right now."

16. Emergency services personnel then left the scene to respond to a report of a fire that turned out to

be a false report. When they returned to the scene, the contaminated SUV was gone.

17. The contaminated SUV was gone because, at Defendant's direction, PERSON TWO, who was PERSON ONE's brother, drove the SUV from California City to PERSON TWO's residence in Boron, which is in Kern County and the State and Eastern District of California. PERSON TWO drove the contaminated SUV to Boron via California State Route 58.

18. Defendant directed PERSON TWO to drive the contaminated SUV from California City to Boron because it was causing problems for Defendant in California City and he wanted the SUV to be outside the jurisdiction of California City emergency services personnel.

19. At no time was a manifest prepared for the transport of the mercury contained inside the contaminated SUV's cabin from California City to Boron.

20. A couple of hours later, Kern County emergency services personnel found the contaminated SUV at PERSON TWO's residence in Boron. PERSON TWO experienced symptoms related to mercury exposure.

21. COMPANY ONE then remediated the contaminated SUV. In doing so, they detected high levels of mercury inside the SUV's cabin and recovered solid mercury.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

22. In furtherance of the conspiracy, and to accomplish its object, Defendant and his co-conspirators committed the following overt acts, among others:

23. On or about the early morning of February 26, 2024, Defendant drove to a residence in California City where the contaminated SUV was being monitored by emergency services personnel.

24. On or about the early morning of February 26, 2024, Defendant contacted and directed PERSON TWO to drive the contaminated SUV from California City to Boron, which was outside the jurisdiction of California City emergency services personnel.

25. On or about the early morning of February 26, 2024, PERSON TWO drove the contaminated SUV to Boron.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: [42 U.S.C. §§ 6928(d)(5), 6928(e) – Transportation of Hazardous Waste without a Manifest; Knowing Endangerment of Others]

The Grand Jury further charges: T H A T

MICHAEL KULIKOFF,

defendant herein, as follows:

26. Paragraphs 1 through 8 and 11 through 25 are incorporated as if set forth herein. Between on or about the night of February 25, 2024, and morning of February 26, 2024, in the County of Kern, State and Eastern District of California, and elsewhere, Defendant did knowingly transport and cause to be transported hazardous waste, to wit: mercury, without a manifest.

It is further alleged that in connection with the offense alleged in Count Two, Defendant knew at that time that he thereby placed another person in imminent danger of death or serious bodily injury.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.  Upon conviction of one or more of the offenses alleged in Counts One through Two of this Indictment, defendant MICHAEL KULIKOFF shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including, but not limited to:

    a.  A sum of money equal to the amount of proceeds traceable to such offenses, for which defendant is convicted.

2.  If any property subject to forfeiture as a result of the offenses alleged in Counts One through Two of this Indictment, for which defendant is convicted:

    a.  cannot be located upon the exercise of due diligence;
    b.  has been transferred or sold to, or deposited with, a third party;
    c.  has been placed beyond the jurisdiction of the court;
    d.  has been substantially diminished in value; or
    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

_____
FOREPERSON

MICHELE BECKWITH
Acting United States Attorney

By: **KIMBERLY A. SANCHEZ**
_____
KIMBERLY A. SANCHEZ
Assistant U.S. Attorney
Chief, Fresno Office

INDICTMENT

6